UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARC PIERRE; et al.,

               Plaintiffs,

-against-

CONSULATE GENERAL OF HAITI, et al.,

               Defendants.

22-CV-8504 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Marc Pierre, who is proceeding *pro se* and *in forma pauperis* ("IFP"), brings this action under the Alien Tort Statute, 28 U.S.C. § 1350. He styles his pleading as a class action and seeks relief on behalf of Haiti and other individuals, identifying himself as a "lead Plaintiff." (ECF 5, at 1.)

By order dated December 20, 2022, the Court dismissed the claims brought on behalf of Haiti and the individual plaintiffs and granted Pierre 30 days' leave to assert any claims he wished to bring on his own behalf. On January 20, 2023, Plaintiff filed a 788-page amended complaint, in which he seeks "to redress the violation of procedural due process of the International Court of Justice by the United Nations regarding Uni-lateral Declaration on Behalf of Haiti dated October 17 of 2018." (*Id.* at 4.) (the "2018 Haiti Declaration").

For the reasons set forth in this order, the Court dismisses the amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id*.

## BACKGROUND

In its December 20, 2022, order, the Court granted Plaintiff leave to file an amended complaint to assert his own claims, explaining that he could not assert claims on behalf of any other plaintiff. In the amended complaint, Plaintiff largely reasserts the same claims he asserted

in the original complaint, providing a comprehensive history of Haiti. He includes, however, a description of his attempts to submit the 2018 Haiti Declaration to the Consulate General of Haiti, which the Court understand to be either the consular office or the individual in charge of the office. The person currently in charge of the Consulate General of Haiti in New York is a woman with the title, Cheffe de Poste A.I.[1] For the purposes of this order, the Court will use the term Chef de Poste when referring to the person in charge of the Consulate General because Plaintiff refers to this individual as a man; when referring to the office, the Court will use the term Consulate General. The Court summarizes Plaintiff's allegations as follows.

In 2018, Plaintiff conducted "an investigation [that] led to the creation of" the 2018 Haiti Declaration, "which requested, Immediate Injunctive Relief on the Government of President Jovenel Moïse due to the revelation of his administration being connected to drugs, Michael Martely, and misappropriation of Petrocaribe funds." (ECF 5, at 14.) Plaintiff sought the return of $18,000,000,000 "in missing Haiti Earthquake Relief funds and for me to lead an Independent Haiti Reconstruction Commission [IHRC] funded by the United Nations to rebuild Haiti." (*Id.*)

Also in 2018, Plaintiff brought the 2018 Haiti Declaration to the Defendant Consulate General of Haiti in New York, New York, where the "technocrats at the embassy were dumbfounded by my Unilateral Declaration, the information it contained and didn't know how to process it." (*Id.* at 16.) Plaintiff explained to the consular staff that he "wanted to help them recover the missing IHRC funds and rebuild Haiti." (*Id.*) He further "explained the process to the administrative clerks and that he needed it to be forwarded to the UN Secretary General by the Ambassador to the UN after review but they placated me for weeks without letting me talk to

---

[1] *See* Consulate General of Haiti in New York, https://cghaitiny.org.

any technocrats at the consulate or processing my document." (*Id.*) Plaintiff states that notwithstanding his request to speak with the Chef de Poste, the consular staff "refused to let me speak with him." (*Id.*)

Plaintiff "also sent a certified copy of the [2018 Haiti Declaration] to the UN Secretary General Antonio Guterres for processing . . . in November 2018 and waited for a response but never got one." (*Id.* at 17.) In 2020, Plaintiff continued to seek to ensure that the 2018 Haiti Declaration would be "endorse[d] and process[ed]," but his attempts were unsuccessful. (*Id.* at 18.) Plaintiff started the Haiti Reformation Project ("HRP") and acted as its "Attorney-in-Fact, Agent and Representative." (*Id.*) Through the HRP, Plaintiff advocated on behalf of the Haitian diaspora and created a "Tabula-Rasa Accord," which was given to now-deceased President Moïse, on April 2, 2021, who then scheduled a national referendum for a new Constitution, scheduled for June 27, 2021.[2]

Plaintiff names as defendants (1) the Consulate General of Haiti, (2) Core Group Members France, Canada, and the United States,[3] and (3) the current Prime Minister of Haiti, Ariel Henry, seeking a response to Plaintiff's Tabula-Rasa Accord.

---

[2] The Court takes judicial notice of the fact that President Moïses was assassinated on July 7, 2021. *See* U.S. Department of State, Statement on the Anniversary of Haitian President Jovenel Moïse's Assassination, https://www.state.gov/statement-on-the-anniversary-of-haitian-president-jovenel-moises-assassination.

[3] Core Group members include "the Deputy Special Representative of the Secretary General of the United Nations, the Ambassadors of Germany, Brazil, Canada, France, United States of America, and the representatives of Spain, the Organization of American States and the European Union." U.S. Embassy in Haiti, Statement of the Core Group, Port-au-Prince, https://ht.usembassy.gov/statement-of-the-core-group/?_ga=2.21280760.2130863569.1681494987.

## DISCUSSION

A.  **Alien Tort Statute**

Plaintiff asserts that this Court has jurisdiction of his due process claims under the Alien Tort Statute ("ATS"), which invests district courts with "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Plaintiff's claims, however, do not sound in tort. Rather, he seeks an order from this Court directing the Prime Minister of Haiti, the Chef do Poste, and the United States, Canada, and France to respond to his submissions. Because the ATS does not confer jurisdiction on this Court to order these officials and governments to respond to Plaintiff's submissions, this Court lacks jurisdiction under the ATS to hear Plaintiff's claims.

B.  **Mandamus Relief**

The Court construes the amended complaint as a request for mandamus relief because Plaintiff asks this Court to compel foreign actors to accept his 2018 Haiti Declaration and consider his Tabula-Rasa Accord. This Court cannot, however, issue any such order. While the Court does have jurisdiction of "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff," 28 U.S.C. § 1361, such jurisdiction does not extend to non-federal actors, *see generally Columbia Artists Mgmt., LLC v. Swenson & Burnakus, Inc.*, No. 05-CV-7314 (LBS), 2008 WL 4387808, at *8 (S.D.N.Y. Sept. 24, 2008) ("It is well-settled that 'federal courts have no general power to compel action by state officials.'") (quoting *Davis v. Lansing*, 851 F.2d 72, 74 (2d Cir.1988) (rejecting application for writ of mandamus compelling state court judge to permit defense counsel's use of race-based peremptory challenges)). Accordingly, the Court denies Plaintiff's request for relief compelling foreign officials to accept and consider his Declaration and Accord.

5

## C.     Sovereign Immunity – Claims Against the United States

The Court must dismiss any claims Plaintiff is bringing against the United States under the doctrine of sovereign immunity. This doctrine bars federal courts from hearing all suits against the federal government, including suits against any part of the federal government, such as a federal agency, except where sovereign immunity has been waived. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are . . . barred under the doctrine of sovereign immunity, unless such immunity is waived."). The Court therefore dismisses Plaintiff's claims against the United States under the doctrine of sovereign immunity. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).[4]

## D.     Foreign Sovereign Immunities Act

Plaintiff's claims against the Prime Minister of Haiti and the governments of Canada and France are foreclosed by the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 *et seq.* The FSIA "is the exclusive source of subject matter jurisdiction in suits brought against a foreign state." *Matar v. Dichter*, 500 F. Supp. 2d 284, 288 (S.D.N.Y. 2007); *see Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) ("The Foreign Sovereign Immunities Act 'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'") (quoting *Argentine Republic v. Amareda Hess Shipping Corp.*, 488 U.S. 428, (1989)).

---

[4] The Federal Tort Claims Act ("FTCA") provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680. Plaintiff's claims, as noted above, do not sound in tort.

Canada and France are foreign states, and the Haitian Prime Minister is an "instrumentality of a foreign state." *See* 28 U.S.C. §1603(b). Thus, these three Defendants are immune from this lawsuit unless one of the exceptions in Section 1605 of the FSIA applies. Even granting Plaintiff's complaint the most liberal possible construction, his allegations do not fall within the purview of any of the exceptions set forth in the FSIA. Therefore, the claims brought against Prime Minister Henry, Canada, and France must be dismissed, because each is immune under the FSIA from the jurisdiction of the Court. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

**E.     Vienna Convention on Consular Relations**

The Court construes Plaintiff's claims brought against the Consulate General of Haiti in New York as brought against the Chef de Poste. Under the Vienna Convention on Consular Relations ("VCCR"), the Court must dismiss the claims against the Chef de Poste. The VCCR provides that "'[c]onsular officers and consular employees shall not be amenable to the jurisdiction of the judicial or administrative authorities of the receiving State in respect of acts performed in the exercise of consular functions.'" *Bardales v. Consulate Gen. of Peru in New York*, 490 F. Supp. 3d 696, 705-06 (S.D.N.Y. 2020) (quoting *Park v. Shin*, 313 F.3d 1138, 1141 (9th Cir. 2002) and VCCR, Apr. 24, 1963, art. 43(1), 21 U.S.T. 77, 104). Specifically, "consular officers and employees are only entitled to immunity 'in respect of acts performed in the exercise of consular functions.'" *Id.* (quoting *Rana v. Islam*, 305 F.R.D. 53, 60 (S.D.N.Y. 2015) and VCCR art. 43(1), Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261).

Courts utilize a "two-part inquiry" to determine whether consular immunity applies. *Ford v. Clement*, 834 F. Supp. 72, 75 (S.D.N.Y. 1993). "First, the court must determine whether the official's actions 'implicated some consular function.'" *Rana*, 305 F.R.D. at 60 (quoting *Ford*, 834 F. Supp. at 75). Second, courts consider whether such action was "performed in the exercise

7

of the consular functions in question." *Ford*, 834 F. Supp. at 75. In addition to specific functions, Article 5(m) of the VCCR provides that consular functions also include:

> performing any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State.

*Id.* Courts have concluded that "the management and supervision of . . . consular staff" is a consular function" that fits within Article 5(m). *Id.*

Here, Plaintiff sues the Chef de Poste after consular staff prevented Plaintiff from meeting with the Chef de Poste regarding Plaintiff's 2018 Haiti Declaration and his Tabula-Rasa Accord. This conduct, denying Plaintiff a meeting with the Chef de Poste fits within the Chef de Poste's management and supervision of the consular office. The Chef de Poste is therefore immune from this lawsuit for any claim Plaintiff seeks to bring against this individual for refusing to meet with Plaintiff.

F.   **Further Leave to Amend Denied**

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

**CONCLUSION**

Plaintiff's amended complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court dismisses all claims brought against (1) the United States, under the doctrine of sovereign immunity, (2) Prime

Minister Henry, Canada, and France, under the Foreign Sovereign Immunities Act, and (3) the Consulate General of Haiti, construed as brought against the Chef de Poste, under the Vienna Convention on Consular Relations. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

As the Court has dismissed this action, Defendants are not required to respond to the amended complaint. Accordingly, the Court directs the Clerk of Court not to process Plaintiff's proposed default judgment and certificates of default. (*See* ECF 11-13.) This action is closed and all motions filed in this action are to be terminated.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk directs the Clerk of Court to enter judgment in this action.

SO ORDERED.

Dated:   May 22, 2023
         New York, New York

                                                           /s/ Laura Taylor Swain
                                                           LAURA TAYLOR SWAIN
                                                        Chief United States District Judge